**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **APRIL FLAGG,** | ) | **CASE NO.1:14CV0004** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **STAPLES THE OFFICE SUPERSTORE** | ) | **OPINION AND ORDER** |
| **EAST, INC. ET AL.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants Motion for Summary Judgment (ECF #

32).   For the following reasons, the Court grants, in part, and denies, in part, Defendants'

Motion.

According to Plaintiff's Second Amended Complaint, Plaintiff April Flagg ("Flagg")

was employed by Defendant Staples the Office Superstore East, Inc. ("Staples") in March of

2010.   During her employment with Staples, Flagg was pregnant three times.   In April 2011,

she gave birth to her first child and in December 2012, gave birth to her second.   Plaintiff

contends Defendants discriminated, harassed and retaliated against her based on her

pregnancies and her request for leave due to her pregnancies.   It further discriminated,

harassed and retaliated against her for her need to express breast milk.  Plaintiff alleges claims of unlawful discrimination under Ohio and federal law, Retaliation for use of Family Medical Leave Act ("FMLA") leave, Interference with her FMLA leave and Intentional Infliction of Emotional Distress.

**<u>Defendants' Motion for Summary Judgment</u>**

Defendants Staples The Office Superstore East, Inc. ("Staples") and Matt Mahran ("Mahran") move for summary judgment on all Flagg's claims, contending Flagg was discharged due to her inappropriate aggressive conduct towards another employee.   Staples alleges Flagg was hired in March of 2010 as a part-time cashier in Mentor, Ohio.  Defendant Mahran was the General Manager of the store and Flagg's supervisor.  When she was hired, Flagg received Staples' Associate Handbook and signed an acknowledgment that she read and understood its contents.  The Handbook contains Staples' policy forbidding harassment and provides internal policies for addressing harassment in the workplace.  It further contains Staples' Guidelines for Conduct addressing conduct Staples deems unacceptable and subject to immediate termination.  Terminable conduct includes direct or indirect threats made to supervisors, fellow employees or customers.

In October 2011, Mahran promoted Plaintiff to Customer Service Lead and in January 2012 Plaintiff went full time.  In June 2012, Plaintiff became an Inventory Associate which involved no change in her pay or full time status.

In June 2013, Mahran was informed that Flagg had been screaming in the store and had grabbed a phone out of the hands of a co-worker, Breanna Dale, who was trying to contact her manager to intervene in the situation.  Flagg allegedly followed Dale to the

manager's office while yelling at Dale.  Flagg then crossed her name off the schedule and left. Mahran was not at the store on the day this incident occurred.  The following day, Mahran contacted Human Resources, which began an investigation of the incident.  Statements were obtained from employees who were present and witnessed the incident.   These witness statements were sent to Lorna Wood, Senior Human Resources Manager for Defendant, who reviewed the witness statements and made the decision to terminate Flagg for violating Staples' Guidelines for Conduct.

In their Motion for Summary Judgment, Defendants argue they did not engage in discriminatory conduct resulting in Flagg's termination.  Instead, Flagg was terminated for threatening a co-worker in violation of Staples' Guidelines for Conduct.  They further argue Flagg's Title VII discrimination claim fails because Flagg failed to exhaust her administrative remedies since she never filed a charge of discrimination with the EEOC.  Defendants contend Flagg's state law discrimination claim fails because she cannot show a similarly situated individual outside her protected class was treated more favorably.  Furthermore, according to Defendants, Flagg's FMLA Interference claim must fail because Flagg received all the FMLA leave to which she was entitled and her FMLA Retaliation claim fails because her termination was not pretextual and was not related in any way to her use of FMLA leave. Lastly, Defendants contend Plaintiff's Intentional Infliction of Emotional Distress claim fails because her transfer to Inventory Specialist was not outrageous.

## LAW AND ANALYSIS

### Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Title VII Discrimination based on Gender and Pregnancy**

In Counts I and II of her Second Amended Complaint, Flagg alleges unlawful discrimination based on her gender and on account of her pregnancies.  These claims arise

under both federal and state law. Staples contends Flagg's Title VII claims fail because Plaintiff failed to exhaust her administrative remedies prior to filing suit. Defendants contend failure to do so deprives the Court of subject matter jurisdiction over Flagg's Title VII claims.

Flagg responds that Sixth Circuit precedent holds that a failure to exhaust administrative remedies does not deprive the Court of jurisdiction.

"Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee based on sex, 42 U.S.C. § 2000e–2, or because she has opposed unlawful discrimination, *Id.* § 2000e–3(a). Title VII requires that a discrimination charge be timely filed with the EEOC. *Id.* § 2000e–5(e)(1). However, before bringing suit under Title VII, a claimant must exhaust her administrative remedies." *Crowder v. Railcrew Xpress,* 557 Fed.Appx. 487, 491 (6th Cir. 2014). While the Court agrees that failure to exhaust administrative remedies in a Title VII action does not deprive the Court of jurisdiction, exhaustion of the administrative remedies is a precondition to filing suit. "Exhaustion of administrative requirements is a precondition to filing a Title VII suit." *Lockett v. Potter,* 259 Fed.Appx. 784, 786, 2008 WL 111023, 1 (6th Cir. 2008), citing *McFarland v. Henderson,* 307 F.3d 402, 406 (6th Cir.2002). "A person who claims to have been discriminated against in violation of Title VII may not seek relief in federal court unless administrative remedies have first been exhausted."); *Nelson v. General Elec. Co.* 2 Fed.Appx. 425, 428, 2001 WL 69201, 2 (6th Cir. 2001) *quoting Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1486-87 (6th Cir.1989). Defendants have pled failure to exhaust administrative remedies as an affirmative defense and Flagg has offered no evidence that she filed an administrative claim. Therefore, the Court grants Defendants' Motion for

Summary Judgment on Flagg's Title VII claims.

**Gender and Pregnancy Discrimination Under Ohio law.**

O.R.C. § 4112.02(A) prohibits discrimination based on sex "with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." "Ohio courts apply federal case law interpreting Title VII of the Civil Rights Act of 1964 to claims arising under R.C. Chapter 4112 to the extent that the terms of the statutes are consistent." *Birch v. Cuyahoga Cty. Probate Court,* 173 Ohio App.3d 696, 704 (8th Dist. 2007). O. R.C. § 4112.02(B) provides that 'because of sex' includes "because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical condition," and that pregnant women "shall be treated the same for all employment-related purposes * * * as other persons not so affected but similar in their ability or inability to work." *Toman v. Humility of Mary Health Partners,* No. No. 13MA 105, 2014 WL 4959147, 3 (Ohio App. 7 Dist.,2014) *citing McFee v. Nursing Care Mgt. of Am., Inc.,* 126 Ohio St.3d 183, 2010–Ohio–2744, 931 N.E.2d 1069, ¶ 11.

"Sex discrimination in employment may be proved either by "direct" evidence or by "indirect" evidence and application of the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)."; *Birch,*173 Ohio App.3d at 20. "In employment discrimination claims, 'direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'"*Pitts-Baad v. Valvoline Instant Oil Change,* No. 2012CV0028, 2012 WL 4946433, 4 (Ohio App. 5 Dist., Oct 15, 2012) quoting *Laderach v. U–Haul [of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000). " Direct evidence proves the existence of a fact without any

6

inferences or presumptions.  To establish 'direct evidence' of discrimination through a supervisor's comments made in the workplace, the remarks must be 'clear, pertinent, and directly related to decision-making personnel or processes." *Id.*  "However, comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Pitts-Baad,* 2012 WL at 6, citing  *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 433 (6th Cir.2002).  If a plaintiff produces direct evidence of discrimination, she need not satisfy the four-part test for establishing a prima facie case using indirect evidence. *Rowan v. Lockheed Martin Energy Sys., Inc.* 360 F.3d 544, 548. (6th Cir. 2004).  "[A]n employee who has presented direct evidence of improper motive does not bear the burden of disproving other possible reasons for the adverse action.  Rather, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Birch v. Cuyahoga Cty. Probate Court* 173 Ohio App.3d 696, 705, 880 N.E.2d 132, 139 (Ohio App. 8 Dist.,2007), quoting  *Weigel v. Baptist Hosp. of E. Tennessee* 302 F.3d 367, 382 (6th Cir. 2002).

Regardless of whether the Plaintiff provides direct or indirect evidence of discrimination, Plaintiff  "must prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination." *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 130, 672 N.E.2d 145.  Explicit statements of discriminatory intent constitute such direct evidence of discrimination. See *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 577, fn. 2; (6th Cir. 2000) *Wittman v. Akron,* Summit App. No. 21375, 2003-Ohio-5617, 2003 WL 22399742, at ¶ 16.  Such statements are

distinguished from harmless, stray remarks by the nexus between the improper motive and the decision-making process or personnel.

According to Flagg's deposition testimony, Mahran made a number of statements evidencing discriminatory animus against Flagg based on her pregnancies.  Mahran told her several times "if I got pregnant again, he might as well just let me go because I was rarely there." (Flagg depo. Pg. 297).   When she announced to Mahran her first pregnancy, Mahran allegedly told her he could not have her take leave at the same time as another employee.  (*Id.* at 305).  Mahran reportedly asked Flagg "it's about time for you to be pregnant again, isn't it?"  (*Id* at 296).  After transferring Flagg from Customer Lead, which was a supervisory position, to Inventory Specialist, which involved heavy lifting and climbing ladders and removed her supervisory responsibilities, Mahran allegedly told Flagg that she would be fine until she blew up like a blimp. (*Id* at 84).  Flagg alleges Mahran made comments demeaning her, including telling her she was just hormonal, pregnant and emotional and calling her children illegitimate.  (*Id* at 309).  While most of these statements are not direct evidence of discrimination because they require some inference to support a discriminatory animus, Mahran's alleged comments that he would have to fire Flagg if she became pregnant again does constitute direct evidence of discrimination because it is an explicit statement of discrimination.

Flagg alleges a number of adverse employment actions taken by Defendants as a result of her pregnancies.  These include cutting her work hours, demoting her from Customer Lead with supervisory responsibilities to Inventory Specialist with no supervisory responsibilities and ultimately her termination.  Mahran was involved in each of these decisions.  There is no

dispute that Mahran was the ultimate decisionmaker on her alleged reduced hours and job transfer. While Defendants contend Lorna Wood made the decision to terminate Flagg, Mahran investigated the incident, recommended her termination to Wood and informed Flagg of her termination. (Mahran pg. 86).

Defendants argue that Flagg's transfer to Inventory Specialist was not an adverse employment action because it did not involve a reduction in pay. However, the Court finds Flagg's representation that she lost her supervisory role due to the transfer creates an issues of fact whether it was adverse. "Transfers can be considered adverse actions if they are accompanied by a change in salary, benefits, title, or work hours, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Arnold v. City of Columbus*, 515 Fed.Appx. 524, 532, 2013 WL 628447, 6 (6th Cir. 2013). Thus, her alleged reduction in work hours, duties and termination are all considered adverse employment actions.

Flagg took two maternity leaves while employed with Defendants. The first was April 3, 2011 through July 6, 2011. The second ran from December 2, 2012 through February 4, 2013. Prior to her maternity leaves, Flagg attests she was a great employee and had been made a key holder (a position awarded employees considered by Defendants to be trustworthy). Flagg attests that one week after she told Mahran she was pregnant in 2010 her hours were cut. (Flagg depo at 195). Flagg was reassigned to inventory in May 2012. Mahran testified it was at Plaintiff's request (Mahran depo. Pg 85). Flagg denies it was at her request (Flagg Depo. Pg. 205).

Defendants must demonstrate by a preponderance of the evidence that the reason for

her reassignment, reduction in hours and termination were all the result of legitimate non-discriminatory reasons.  However, each of these are based on disputed issues of fact. Mahran's alleged statements that he might as well let Flagg go do to her pregnancies is direct evidence of discrimination.  Since he admittedly played a role in her termination-i.e- as stated above Mahran investigated the incident, recommended termination to Wood and informed Wood of her termination,  "remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff, were relevant."  *Ercegovich v. Goodyear Tire & Rubber Co.* 154 F.3d 344, 354 -355 (6th Cir.1998).

Defendants have offered evidence that Flagg was terminated due to an incident that occurred on June 2013.  That incident involved a dispute between Flagg and another employee Breanna Dale over pay differences.  After investigating the incident, Defendants determined Flagg's behavior violated the Guidelines for Conduct of Defendant and was subject to immediate termination.  Defendants determined Flagg's conduct, in particular her cutting off the phone when Dale tried to call a supervisor to intervene, amounted to threatening behavior.  Mahran never obtained a statement from Flagg when he investigated the matter but instead obtained statements from Dale and two other witnesses to the events. Mahran recommended Flagg be terminated after he investigated the matter.  Thus, the Court finds construing all facts in favor of Flagg that genuine issues of fact preclude summary judgment for Defendants on Flagg's sex discrimination claims under Ohio law.

**FMLA Interference**

Defendants move for summary judgment on Flagg's FMLA Interference claim,

contending Flagg cannot meet her prima facie burden because it is undisputed she received all the FMLA leave she requested.  Flagg's Brief in Opposition to Summary Judgment does not address her FMLA Interference claim and offers no opposition to Defendants' Motion for Summary Judgment on the claim.  Under applicable Sixth Circuit precedent these claims are deemed abandoned and summary judgment for Defendants is granted on Plaintiff's FMLA Interference claim.  "This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.* 545 Fed.Appx. 368, 372 (6th Cir. 2013).

## FMLA Retaliation

"To establish a claim of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity, i.e. notifying the defendant of her intent to take leave under the FMLA; (2) she suffered an adverse employment action[;] and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. (Internal citation omitted).   "If a plaintiff's claim is based on circumstantial evidence, *McDonnell Douglas Corp. v. Green* 's burden-shifting analysis applies." *Judge v. Landscape Forms, Inc.* 592 Fed.Appx. 403, 408-409 (6th Cir. 2014).  Once plaintiff establishes its prima facie case, "[t]he burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for terminating the plaintiff.  The plaintiff then has the burden of showing that the defendant's reasons are merely a pretext for discrimination. *Judge*, 592 Fed. Appx. 408-409.

In this case, Flagg argues FMLA Retaliation under the *McDonnell-Burdine* burden

11

shifting analysis.  Thus, Flagg has not argued direct evidence of FMLA Retaliation nor does she argue a mixed-motive theory because the *McDonnell-Burdine* method only applies to single motive claims.  See *Campbell v. Costco Wholesale Corp.*, No. 3:12cv306, 2013 WL 5164635 (M.D.Tenn.,September 12, 2013) citing *Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d 274, 282 (6th Cir.2012).  "The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir.2007).

Defendants do not contest that Flagg engaged in a protected activity, nor that she suffered an adverse employment action concerning her termination.  Defendants do dispute that Flagg's 2011 job reassignment was an adverse employment action, however, even if it were, Defendants contend Flagg cannot make a prima facie case that these actions were causally connected to her FMLA use.

Flagg took two maternity leaves while employed with Defendants.  The first was April 3, 2011 through July 6, 2011.  The second ran from December 2, 2012 through February 4, 2013.  Flagg was reassigned to inventory in May 2012.  Mahran testified it was at Flagg's request (Mahran depo. Pg 85).   Flagg denies it was at her request (Flagg Depo. Pg. 205).  The job reassignment involved no loss of pay or hours but Flagg contends it resulted in a loss of supervisory authority.   However, the Court finds Flagg's representation that she lost her supervisory role due to the transfer creates an issue of fact whether it was adverse.  "Transfers can be considered adverse actions if they are accompanied by a change in salary, benefits, title, or work hours, significantly diminished material responsibilities, or other indices that

12

might be unique to a particular situation." *Arnold v. City of Columbus,* 515 Fed.Appx. 524, 532, 2013 WL 628447, 6 (6th Cir. 2013).  Neither parties dispute that termination of employment is an adverse employment action.

Therefore, there is a genuine issue of fact whether the reassignment was an adverse employment action.  However, Flagg must still demonstrate a causal connection between her FMLA use and her reassignment and termination.  Flagg argues she can show a causal connection via the temporal proximity of the reassignment and termination.  Flagg has failed to do so.  First, the job reassignment occurred nearly eleven months after Flagg returned from her first period of FMLA leave and well before she requested a second period of leave. Furthermore, her termination occurred approximately five months after she returned from her second period of leave.  "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir.2008).  "We have found sufficient evidence of a causal connection where the time between when the employee's leave expired or the employee requested leave and the employee's termination was two to three months."  *Judge,* 592 Fed.Appx. at 409.  However, for more than three months beyond the expiration of leave, the Sixth Circuit has held no inference of a causal connection may be drawn.  See *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir.1986) (temporal proximity period of four months did not support prima facie inference of retaliation) see also *Matricardi v. Astro Shapes, Inc.* 2007 WL 2902918, 14 (N.D.Ohio, 2007), (plaintiff failed to satisify prima facie burden of retaliation when temporal

13

proximity period of four months absent other evidence).   "In this circuit, a period of more

than four months was found to be too long to support an inference of causation."  *Imwalle v.*

*Reliance Medical Products, Inc.* 515 F.3d 531, 550 (6th Cir. 2008).

      In light of the above Sixth Circuit holdings, temporal proximity of five months is

insufficient to establish a causal connection in and of itself.   However, Flagg contends she

has offered additional circumstantial evidence of retaliatory intent sufficient to establish her

prima facie case.  First, Mahran made comments that Flagg "was always going on maternity

leave" and that "she might as well just not work." (Flagg depo at 218).   Flagg puts these

statements at the time around December 2012 when she requested her second period of

FMLA leave. Mahran told her several times "if I got pregnant again, he might as well just let

me go because I was rarely there." (Flagg depo. Pg. 297).   The Court finds these statements

provide sufficient evidence of retaliatory animus to support her prima facie burden on

termination.  However, these comments were made almost nine months and indicate animus

towards her ***repeated*** use of leave.  Since Flagg was reassigned eleven months after her first

period of leave and Mahran made no such comments during her first period of FMLA leave

Flagg cannot show a causal connection between her May 2012 reassignment and her use of

FMLA leave from April through July of 2011.

      "After an employee establishes a prima facie case of FMLA retaliation, the burden

shifts to the defendant to establish a legitimate, non-discriminatory reason for its action."

*Romans v. Michigan Dept. of Human Services*, 668 F.3d 826, 842 (6th Cir. 2012).  Here,

Defendants rely on the declaration of Lorna Wood, Senior Human Resources Manager who

attests she terminated Flagg solely due to the June 27, 2013 incident wherein Flagg allegedly

yelled at, followed and disrupted fellow employee Breanna Dale's attempt to contact a supervisor to intervene in the dispute between her and Plaintiff.  According to Wood, Flagg's conduct violated Staples' Guidelines of Conduct and warranted termination.  Wood relied on employee statements obtained by Mahran and the description of the incident by Bryan Wells, the manager on duty at Staples at the time of the incident who witnessed the events or at least a portion of the events.  Mahran was not present at the time of the incident and was not a witness.  Thus, Defendants have satisfied their burden of demonstrating a legitimate, non-retaliatory reason for the termination.

The burden then shifts back to Flagg to show that Defendants proffered explanation is pretextual.  "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action. Whichever method the plaintiff employs, he always bears the burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant [ ] intentionally discriminated against him."  *Seeger v. Cincinnati Bell Telephone Co., LLC* 681 F.3d 274, 285 (C.A.6 (Ky.),2012).

As described in the Court's opinion on Flagg's Ohio sex discrimination, Mahran's statements demonstrating a discriminatory animus against Plaintiff based on her pregnancy leave, coupled with his role in investigating the incident, his recommendation that she be terminated and his role in her actual termination, all present issues of fact concerning pretext insufficient to warrant summary judgment for Defendants on Plaintiff's FMLA Retaliation claim.

## **Intentional Infliction of Emotional Distress**

Under Ohio law, a Plaintiff alleging an Intentional Infliction of Emotional Distress claim must prove the following elements:

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff;
> (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;
> (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and
> (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1110 (6th Cir.2008) (quoting *Ekunsumi v. Cincinnati Restoration, Inc.,* 120 Ohio App.3d 557, 698 N.E.2d 503, 506 (1997)).

To state a claim for IIED, Flagg must show that Defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Long v. Ford Motor Co.,* 193 Fed.Appx. 497, 503 (6th Cir.2006) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) ( *overruled on other grounds* )). "[T]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement." *Baab v. AMR Servs. Corp.,* 811 F.Supp. 1246, 1269 (N.D.Ohio 1993).  "Serious" emotional distress must be "severe and debilitating." *Kovac v. Superior Dairy, Inc.,* 930 F.Supp.2d 857, 870 (N.D. Ohio 2013) quoting *Paugh v. Hanks,* 6 Ohio St.3d 72  (1983)).

16

The Supreme Court of Ohio, in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369,

374-375, described what constitutes extreme and outrageous conduct:   "It has not been

enough that the defendant has acted with an intent which is tortious or even criminal, or that

he has intended to inflict emotional distress, or even that his conduct has been characterized

by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages

for another tort. * * * Generally, the case is one in which the recitation of the facts to an

average member of the community would arouse his resentment against the actor, and lead

him to exclaim, 'Outrageous!'"   "As a matter of law, the conduct must be more than mere

'insults, indignities, threats, annoyances, petty aggressions, or other trivialities.' " *Mason, v.*

*United States Fid. & Guar., Co.,* 69 Ohio App.3d 309,  317, (Ohio App. 1990),  quoting 1

*Restatement of the Law 2d, Torts* (1965) 73, Section 46, comment *d*.

Furthermore, while this Court is obligated to construe all factual inferences in favor of

Plaintiff, it must also be cognizant that "Ohio courts define extreme and outrageous conduct

exceedingly narrow."  *Wolfe v. Thermo Fisher Scientific, Inc.* 2009 WL 1255023, *2

(S.D.Ohio, 2009), citing  *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir.1999)

("[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be

something of an understatement.").

This is true especially in light of what other courts have found to be conduct not

rising to extreme and outrageous.  See *Wolfe,* *2 (S.D.Ohio,2009) ("Plaintiff alleged she was

'falsely imprisoned Plaintiff for four hours without food or water while they interrogated,

intimidated, harassed and embarrassed her.' These allegations are insufficient to state a claim

for IIED under Ohio law.")  *Mullholand v. Harris Corp.*, 72 F.3d 130 (Table), 1995 WL

17

730466 *3 (6th Cir.1995), (a co-worker allegedly sexually harassed plaintiff, spread rumors

about her, and "pushed" the plaintiff "against her locker and slammed its doors against her."

In affirming summary judgment for defendant the Sixth Circuit held, "the district court was

correct in concluding that the 'outrageous and extreme' level that [the co-worker's] behavior

would have to rise to here, in order to constitute an intentional infliction of emotional distress

under Ohio law, has not been met.") *Id.* at * 17-18; *Norman v. City of Lorain, OH* 2006 WL

3337466, *2 (N.D. Ohio, Nov. 16, 2006) (Police officer attempted to place plaintiff in

handcuffs and forced her right arm behind her back "really hard," which allegedly caused

Plaintiff's arm to break.  Officer's alleged actions insufficient to support IIED claim.); *Boggs*

*v. Avon Prods., Inc.,* 56 Ohio App.3d 67, 73 (Ohio Ct.App.1990) (plaintiff's allegations that

his supervisor  harassed and threatened him after plaintiff's accident, knowing that such

conduct would cause him anxiety, did not support IIED claim).   "Only the most extreme

wrongs, which do gross violence to the norms of a civilized society, will rise to the level of

outrageous conduct." *Brown v. Denny* (1991), 72 Ohio App.3d 417, 423, 594 N.E.2d 1008,

1012.

Here, Flagg has failed to point to any evidence of injury sufficient to support an IIED

claim.  In the absence of such evidence summary judgment is warranted.  See *Colston v.*

*Cleveland Public Library* 522 Fed.Appx. 332, 340, 2013 WL 1500438, 8 (6th Cir. 2013),

dismissal warranted when "no evidence that [the] stress was severe or debilitating, or that it

interfered with [plaintiff's] employment or other activities").  Furthermore, Flagg failed to

provide medical evidence of severe or debilitating mental or emotional distress.  "Ohio IIED

claims rely on testimony from a physician, psychologist, or psychiatrist." *Id.*

Therefore, for the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's Title VII, FMLA Interference and FMLA Retaliation claim regarding her reassignment and IIED claims.  The Court denies Defendants' Motion for Summary Judgment on Plaintiff's Ohio sex discrimination claim and FMLA Retaliation claim for retaliatory discharge.

IT IS SO ORDERED.


s/ Christopher A.Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  September 29, 2015

19